# EXHIBIT C

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, BUSINESS ROUNDTABLE, TEXAS ASSOCIATION OF BUSINESS, and LONGVIEW CHAMBER OF COMMERCE,<br><br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL TRADE COMMISSION; LINA KHAN in her official capacity as Chair of the Federal Trade Commission,<br><br>*Defendants*. | Case No. 6:24-cv-00148 |

**DECLARATION OF KELLY R. HALL, PRESIDENT/CEO OF PLAINTIFF
LONGVIEW CHAMBER OF COMMERCE**

1

Pursuant to 28 U.S.C. § 1746, I, Kelly R. Hall, hereby declare as follows:

1. I am the President/CEO of the Longview Chamber of Commerce (the "Longview Chamber"). My business address is 410 N Center Street, Longview, TX 75601.

2. I am offering this declaration in support of the Longview Chamber in the above-captioned case.

3. The Longview Chamber of Commerce is the leading advocacy organization in Gregg County, Texas, representing the interests of business. Our members include over 1,000 businesses and professional organizations in Gregg County and 11 adjacent counties (the "Longview Trade Area"). Our mission is to engage in and promote projects that have a positive economic impact on the Longview Trade Area, serving our members and their 50,000+ employees.

4. I have served as President and CEO of the Longview Chamber of Commerce since 2005. As President and CEO, I develop and oversee the Longview Chamber's initiatives and strategies, oversee the Longview Chamber's overall operations, foster community relationships, and champion economic growth. Over the years, I have worked to drive the Longview Chamber's mission forward, solidifying its position as a cornerstone of the Longview Trade Area business community.

5. The purpose of this declaration is to discuss the impact of the Federal Trade Commission's "Non-compete Clause Rule," Fed. Trade Comm'n, *Non-Compete Clause Rule*, RIN2084-AB74 (Apr. 23, 2024) (the "Rule"), on the Longview Chamber's members. The Longview Chamber joined a coalition comment letter opposing the proposed rule during the notice-and-comment period. See Chamber of Commerce of the United States,

2

"Coalition Comments on FTC Proposed Rule to Ban Noncompetes," https://www.uschamber.com/finance/antitrust/coalition-comments-on-ftc-proposed-rule-to-ban-noncompetes (Apr. 17, 2023).

6. The Rule voids nearly all noncompete agreements and requires employers with existing noncompete agreements to issue notices that noncompete agreements cannot be enforced.

7. In response to the FTC's proposed rule, the Longview Chamber surveyed its members about whether and under what circumstances they enter into noncompete agreements with employees. The results of that survey confirmed that many Longview Chamber members reported that they have noncompete agreements with their employees.

8. Longview Chamber members routinely enter into noncompete agreements for a variety of purposes. To name a few examples, Longview Chamber members may enter into noncompete agreements in order to protect (1) sensitive, confidential and propriety information such as intellectual property, technologies or customer lists, (2) investments in employee training and development, or (3) acquired assets against competition from the seller.

9. Longview Chamber members enter into noncompete agreements with different groups of employees, including equity recipients, named executive officers, and many categories of their employees. Many of these members also enter into forfeiture-of-compensation clauses. The forfeiture clauses typically apply if a former employee solicits other employees or customers, breaches confidentiality agreements, works for a competitor post-departure, or disparages the company.

3

10. By rendering those agreements unlawful, the Rule threatens to have immediate and severe effects on many of the Longview Chamber's members. Thousands of members' agreements will be rendered unenforceable, even if the member has already given valuable consideration for the agreement. Members with similar agreements, such as non-disclosure and non-solicitation agreements, will need to obtain the advice of counsel about whether those agreements remain enforceable and how they can maintain or modify them to fully protect their confidential and proprietary information. And members will also have to begin the expensive and time-consuming process of issuing notices to employees that their noncompete agreements cannot be enforced.

11. If the Rule is not prevented from going into effect, many of the Longview Chamber's members will incur unrecoverable costs to comply with the Rule, including attorney's fees, administrative and labor costs, and litigation expenses from defending against civil enforcement actions. In particular, many of the Longview Chamber's members will need to make changes to their contracting practices in an effort to comply with the Rule, seek the advice of counsel about alternatives to protect their confidential information and workforce investments, and incur administrative and labor costs associated with issuing notices that noncompete agreements cannot be enforced and changing company policies. Other Longview Chamber members will be unwilling to purchase businesses and other assets without a guarantee that the seller will not immediately begin competing against them. And for the Longview Chamber's members that opt to continue their current contracting practices, the Rule threatens to subject them to civil enforcement actions.

12. The Rule also creates uncertainties in industries that depend on noncompete agreements with highly skilled and knowledgeable employees. As one example, many of the Longview Chamber's members use noncompete agreements when hiring senior executives. Senior executives have access to confidential and competitively sensitive information and strategies, which could cause serious harm to businesses if disclosed to a competitor. The Rule eliminates an important tool that many Longview Chamber members use to protect their interests when hiring senior executives. In addition, many of the Longview Chamber's healthcare members have noncompete agreements with physicians and other skilled healthcare providers, which enables them to make substantial investments in recruiting and training quality healthcare providers. The Rule undermines these healthcare members' ability to ensure adequate care for patients in their communities. Similarly, many technology companies have noncompete agreements with their software engineers and computer scientists. These highly skilled and highly compensated employees have access to—and may even play a role in developing—crucial confidential and proprietary information, intellectual property, and technologies. The Rule impairs technology companies' ability to disclose confidential information to these employees without fear that a competitor could access it by hiring away the employee.

13. Many other members use noncompete agreements to protect competitively sensitive information, such as trade secrets, customer lists, and pricing strategy and data. Preventing competitors from unfairly accessing this confidential information by hiring away employees preserves healthy and vibrant competition. Noncompete agreements provide clearer rules and are easier to enforce than alternatives, such as trade secret

lawsuits or non-disclosure and non-solicitation clauses.  In addition, many Longview Chamber members reported negotiating mutually agreeable resolutions with employees who were bound by a noncompete agreement but nonetheless wanted to leave to work for a competitor.

   14. The members of the Longview Chamber reported that without the ability to enter into noncompete agreements, they would have to reduce the amount of sensitive information they shared with employees, lower their investments in training new employees, and change their compensation arrangements.

   15. If the effective date of the Rule is delayed or the Rule does not go into effect, many of the Longview Chamber's members would spend less money complying with the Rule.  They would also be free to continue using noncompete agreements to protect their confidential proprietary information, invest in employee training and development without fear that competitors could free-ride on their investments, and purchase business assets without concerns about competition from the seller.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on April 23, 2024 at 410 N Center St., Longview, TX 75601.

*Kelly R. Hall*

Kelly R. Hall