**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL TRADE COMMISSION, *et al.*, <br><br> Defendants. | Case No. 6:24-cv-00148-JCB |

**DEFENDANTS' MOTION TO LIMIT RELIEF TO PLAINTIFFS' IDENTIFIED
MEMBERS, OR IN THE ALTERNATIVE, TRANSFER VENUE
UNDER THE FIRST-TO-FILE RULE**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................5

BACKGROUND ....................................................................................................................6

I.     The Federal Trade Commission's Non-Compete Rule ..................................................6

II.    Ongoing Challenges to the Non-Compete Rule ...........................................................8

ARGUMENT ........................................................................................................................10

I.     Plaintiffs Cannot Litigate This Case on Behalf of Millions of Anonymous Members. ...........10

II.    In the Alternative, If the Court Permits Plaintiffs to Continue to Litigate on Behalf of Unidentified Members, the Court Should Transfer This Case to the Venue of the First-Filed Case. ............................................................................................................12

CONCLUSION ....................................................................................................................16

# TABLE OF AUTHORITIES

**CASES**

*Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599 (5th Cir. 1999) ................................................................................... 13, 14, 15

*Doe v. Stegall*,
  653 F.2d 180 (5th Cir. 1981) ................................................................................................ 12

*Friends of the Earth, Inc. v. Chevron Chem. Co.*,
  129 F.3d 826 (5th Cir. 1997) ................................................................................................ 11

*Mann Mfg., Inc. v. Hortex, Inc.*,
  439 F.2d 403 (5th Cir. 1971) ......................................................................................... 13, 16

*Marshall v. Chevron U.S.A. Inc.*,
  No. MO:19-cv-273-DC-RCG, 2020 WL 9813023 (W.D. Tex. Dec. 10, 2020),
  *report & recommendation adopted*, No. MO:19-cv-276-DC, 2021 WL 2181148
  (W.D. Tex. Jan. 6, 2021) ....................................................................................................... 14

*Nat'l Health Fed'n v. Weinberger*,
  518 F.2d 711 (7th Cir. 1975) ................................................................................................ 16

*Platt v. Nash*,
  No. 4:16-cv-294, 2016 WL 6037856 (E.D. Tex. Oct. 14, 2016) .................................... 13, 14

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997) ....................................................................................... 13, 14, 15

*Sealed Appellant v. Sealed Appellee*,
  No. 22-50707, 2024 WL 980494 (5th Cir. Mar. 7, 2024) ..................................................... 12

*Sutter Corp. v. P&P Indus., Inc.*,
  125 F.3d 914 (5th Cir. 1997) ......................................................................................... 12, 13

*TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*,
  91 F.3d 1 (1st Cir. 1996) ...................................................................................................... 14

*West Gulf Maritime Ass'n v. Int'l Longshoremen's Ass'n*,
  751 F.2d 721 (5th Cir. 1985) ................................................................................. 12, 13, 14, 15

**STATUTES**

15 U.S.C. § 45 ..................................................................................................................... 6, 7

15 U.S.C. § 46 ........................................................................................................................ 7

**RULES**

Fed. R. Civ. P. 4 ........................................................................................................................9

**OTHER AUTHORITIES**

Federal Register, April 30, 2024 Public Inspection Issue,
   https://perma.cc/4LVX-DLTB ...........................................................................................8

Fed. Trade Comm'n, Non-Compete Clause Rule, RIN 3084-AB74 (Apr. 23, 2024)
   (to be codified at 16 C.F.R. part 910),
   https://perma.cc/4JXF-LXBW ........................................................................................ 7, 8

## INTRODUCTION

Non-compete clauses ("non-competes") by their very definition restrict competition in labor and product services markets by preventing individuals from moving freely to switch jobs or start their own businesses. As a result, non-competes suppress wages, dampen innovation, prevent businesses from hiring the talent necessary to be successful, and inhibit new businesses from starting. For many workers, the use of non-competes is also coercive, because contracts containing non-competes are forced upon them unilaterally under circumstances in which they have little to no bargaining power vis-à-vis the employer. After years of studying the competitive harms wrought by non-competes, and after considering thousands of public comments, the Federal Trade Commission ("Commission") voted to use its rulemaking authority under the Federal Trade Commission Act ("FTC Act") to declare the use of non-competes unlawful as an unfair method of competition, with some exceptions.

Within a day of the Commission's vote, and before the Final Rule was published in the Federal Register, two lawsuits were filed in different federal courts. The first was brought by an individual company, Ryan, LLC, in the Northern District of Texas. The second, this case, was brought the next day by four membership associations in the Eastern District of Texas.

In response to this Court's order requiring the disclosure of whether any party in a related case is a member of the plaintiff associations here, Plaintiffs have represented that Ryan is a member of one of those associations—the Texas Association of Business—but refuse to disclose whether Ryan is a member of the much larger U.S. Chamber of Commerce ("Chamber"). In any event, Plaintiffs seek "to pursue litigation on behalf of *all* of [their] members," while also representing that Ryan "will not seek to enforce any remedy in this suit that is limited to [their] members." Pls.' Notice of Related Cases ("Notice") ¶¶ 4, 6 (emphasis added), ECF No. 21. Plaintiffs' position that an association may litigate on behalf of its entire anonymous membership, purportedly totaling in the millions, while

5

carving out a single member when it suits them has no basis in associational standing caselaw and contravenes equitable principles regarding the appropriate scope of remedies. In essence, Plaintiffs seek to litigate as a class, without fulfilling the requirements of Rule 23. Compounding these problems is Plaintiffs' insistence that they need not identify their members at all, even in response to a judicial inquiry regarding related cases. Under that theory, any of Plaintiffs' millions of undisclosed members would be free to pursue parallel litigation while waiting to see how this lawsuit develops before deciding whether to avail themselves of any relief here, or instead opt out and pursue their own claims elsewhere. That is not the law.

Plaintiffs cannot have it both ways. They may litigate this case on behalf of only those members whom they have specifically identified and who have given them authority to do so. Alternatively, if this Court determines that Plaintiffs may proceed as associational entities and that any ultimate relief would flow to all of their members, Plaintiffs cannot pick and choose throughout the litigation which of those members would or would not be the beneficiary of that potential relief. And if the Court agrees with that latter theory of associational standing, then under principles of comity, judicial administration, and uniformity, this case should be transferred to the Northern District of Texas under the first-to-file rule. That is because this case and the *Ryan* case present substantially similar legal issues, seek nearly identical relief, and are both at early stages of litigation. Transfer therefore would prevent the "possibility of two bites at the apple or inconsistent judgments" for Ryan. Scheduling Order at 2, ECF No. 20.

## BACKGROUND

### I.    The Federal Trade Commission's Non-Compete Rule

Congress directed the Commission in Section 5 of the FTC Act to "prevent" individuals and business from using "unfair methods of competition in or affecting commerce," which are unlawful. 15 U.S.C. § 45(a)(1)-(2). The FTC Act authorizes the Commission to undertake this task through both

adjudication under Section 5(b), *see id.* § 45(b), and rulemaking under Section 6(g), *see id.* § 46(g). On April 23, 2024, the Commission utilized its rulemaking authority to issue a rule concluding that it is an unfair method of competition, and thus unlawful, to enter into non-competes and to enforce certain non-competes after the rule's effective date. *See* Fed. Trade Comm'n, Non-Compete Clause Rule, RIN 3084-AB74 (Apr. 23, 2024) (to be codified at 16 C.F.R. part 910), https://perma.cc/4JXF-LXBW ("the Final Rule").

After initially proposing a rule declaring non-competes an unfair method of competition in 2023, the Commission carefully reviewed more than 26,000 comments received in response to its notice of proposed rulemaking. *Id.* at 2. In the Final Rule, the Commission relied on consideration of these comments, as well as its own economic analysis, to find that the use of non-competes is "restrictive and exclusionary conduct" that has an adverse impact on competitive conditions in both labor markets and product and service markets. *Id.* at 105. Specifically, the Commission found that non-competes "facially restrict competitive activity" by "restricting a worker's ability to seek or accept other work or start a business after the worker leaves their job, and by restricting competitors from hiring that worker." *Id.* at 113. The Commission also found that for non-senior executives, as defined in the Final Rule, the use of non-competes is "exploitative and coercive" conduct that similarly harms both labor markets and product and services markets. *Id.* at 105-06. For these workers, the Commission concluded that non-competes are "almost always unilaterally impose[d]" by employers, who "exploit[] their superior bargaining power to impose—without any meaningful negotiation or compensation—significant restrictions on a worker's ability to leave for a better job or to engage in competitive activity." *Id.* at 117. Non-competes thus "force workers to either stay in a job they want to leave or bear other significant harms and costs, such as leaving the workforce or their field for a period of time; relocating out of their area; or violating the non-compete and facing the risk of expensive and protracted litigation." *Id.* at 126.

To address the facially restrictive, and often exploitative, use of non-competes, the Final Rule makes it an unfair method of competition to "enter into or attempt to enter into a non-compete clause," "enforce or attempt to enforce a non-compete clause," or "represent that [a] worker is subject to a non-compete clause" for most employees. *Id.* at 564. The Final Rule treats senior executives differently with respect to non-competes that are in place before the rule becomes effective, allowing those non-competes to remain in effect. *Id.* For non-senior executives, the Final Rule also requires employers to provide notice that it is an unfair of method of competition to enforce non-competes that are in use as of the rule's effective date, 120 days after publication of the Final Rule in the Federal Register (which has not yet happened). *Id.* at 1, 565. Publication is expected on May 7, 2024. *See* Federal Register, April 30, 2024 Public Inspection Issue, https://perma.cc/4LVX-DLTB.

In addition to the positive impact on individuals' economic liberty, the Commission estimates that the Final Rule will result in sizable and important benefits for the American economy overall. The Commission projects the Final Rule will increase new business formation by 2.7% annually, Final Rule at 322, and spawn innovation, with the Commission projecting more than three million new patents being filed in the first year alone, and up to thirty-one billion in ten years. *Id.* at 471. Worker earnings are projected to increase by $400 to $488 billion over ten years. *Id.* at 464. Finally, the Commission "finds that consumer prices may fall under the final rule because of increased competition." *Id.* at 476.

## II.     Ongoing Challenges to the Non-Compete Rule

On April 23, 2024, the date the Commission voted to approve the Final Rule, Ryan filed a lawsuit in the U.S. District Court for the Northern District of Texas asking the Court to "[v]acat[e] and set[] aside" the Final Rule and seeking declaratory judgment. Compl., Prayer for Relief ¶ 75, *Ryan, LLC v. FTC*, No. 3:24-cv-986 (N.D. Tex. Apr. 23, 2024) ("*Ryan* Compl.").

The day after Ryan filed its suit in the Northern District of Texas, Plaintiffs, four membership organizations, filed this lawsuit in the U.S. District Court for the Eastern District of Texas. Compl.,

ECF No. 1 (Apr. 24, 2024). Plaintiffs also seek an order vacating and setting aside the Final Rule, in addition to a declaratory judgment and other miscellaneous relief, including a permanent injunction. *Id.*, Prayer for Relief. On the same day they filed suit, Plaintiffs moved to stay the effective date of the Final Rule and for a preliminary injunction. Pls.' Mot. for Stay of Effective Date & Prelim. Inj., ECF No. 12 (Apr. 24, 2024) ("Pls.' Mot."). As of the date of this filing, Plaintiffs have not perfected service under Fed. R. Civ. P. 4.[1, 2]

On April 26, 2024, this Court entered a scheduling order setting forth a comprehensive plan to manage this case. Scheduling Order, ECF No. 20. As relevant here, the Court set April 29, 2024, as the deadline for Plaintiffs' initial compliance with Local Rule CV-42(a), and April 30, 2024, as the deadline for any "motions related to venue, forum, or related cases." *Id.* at 2.

On April 29, 2024, Plaintiffs filed a Notice of Related Cases. *See* Notice. Plaintiffs U.S. Chamber of Commerce and Texas Association of Business ask to be excused from the requirement to "disclos[e] . . . whether any party in a related case is a member of any plaintiff association here" on First Amendment grounds. Scheduling Order at 2; Notice ¶ 3. However, Plaintiffs represent that Ryan is a member of the Texas Association of Business (and is not a member of either the Business Roundtable or the Longview Chamber of Commerce). Notice ¶ 4. Plaintiffs have not stated whether Ryan is a member of the Chamber. *See* Notice. Texas Association of Business seeks "to pursue litigation on behalf of all of its members," while also representing that its member Ryan "will not seek

---

[1] Although Plaintiffs served the United States Attorney's Office pursuant to Fed. R. Civ. P. 4(i)(1)(A), Defendants have been unable to confirm service on the Attorney General as required by Fed. R. Civ. P. 4(i)(1)(B)-(C). *See* Summons Returned, ECF Nos. 13, 14 (noting only hand delivery to the U.S. Attorney's Office).

[2] On April 25, 2024, ATS Tree Services, LLC filed a lawsuit in the U.S. District Court for the Eastern District of Pennsylvania, asking the court to "set[] aside the Final Rule." Compl., Prayer for Relief, *ATS Tree Servs., LLC v. FTC*, No. 2:24-cv-1743 (E.D. Pa.). Plaintiffs here represent that ATS Tree Services is not a member of any of the Plaintiff organizations. Notice ¶ 5.

to enforce any remedy in this suit that is limited to the members of the plaintiff organizations." *Id.*
¶¶ 4, 6.

**ARGUMENT**

Plaintiffs—four associations—can only represent the interests of members who they have specifically identified through evidence in the record. As of now, Plaintiffs have identified two such companies—Highland Landscaping and Alloy Precision Technologies—both of which are members of the Chamber. Therefore, any relief entered by this Court would not apply to Ryan and transfer would not be necessary. However, if this Court determines that the Texas Association of Business and the other Plaintiffs can litigate on behalf of all their unidentified members—including Ryan—this case should be transferred to the Northern District of Texas, the venue of the first-filed action, *Ryan, LLC v. FTC*. In other words, Plaintiffs cannot proceed as associations purporting to litigate on behalf of their entire respective memberships, which allegedly total in the millions and which the largest Plaintiff insists on keeping secret, while carving out individual members on an ad hoc basis as it suits them.

## I.   Plaintiffs Cannot Litigate This Case on Behalf of Millions of Anonymous Members.

In this case, Plaintiffs purport to represent all of their unidentified members, *see* Notice ¶ 4; Compl., Prayer for Relief. Yet Plaintiffs have submitted evidence of just two individual Chamber members that are allegedly harmed by the Final Rule: Highland Landscaping, LLC, *see* Pls.' Mot. Ex. E (Decl. of Ian MacLean) ¶ 3, ECF No. 12-5, and Alloy Precision Technologies, Inc., *see id.*, Ex. F (Decl. of Michael Canty) ¶ 3, ECF No. 12-6. And Texas Association of Business has now disclosed that Ryan—the plaintiff in a separate action that presents nearly identical issues, *see infra* Argument II—is one of its members, but represents that Ryan will "not seek to enforce" any remedy that the Texas Association of Business may obtain on its behalf. Notice ¶ 6.

10

Otherwise, the associations' members have not been identified in court or agreed to be bound by any judgment—indeed, nothing suggests that they have given the organizations authority to litigate on their behalf or are even aware of this suit. The Chamber claims that it "directly" represents 300,000 members and "indirectly" represents "more than three million U.S. businesses and professional organizations," but provides no information about how these organizations become members or what it means for the organization to "indirectly" represent certain entities. *See* Pls.' Mot. Ex. D (Decl. of Glenn Spencer) ¶ 3, ECF No. 12-4. Longview Chamber of Commerce states that its membership includes "over 1,000 businesses and professional organizations," but likewise does not provide any information about how an organization becomes a member. *See id.* Ex. C ¶ 3, ECF No. 12-3. Business Roundtable states that it is "comprised of more than 200 chief executive officers," but does not specify which executives are members or describe the membership process. *See id.* Ex. G ¶ 1, ECF No. 12-7. And Texas Business Association offers no information whatsoever about its membership. *See id.* Ex. B ¶ 3, ECF No. 12-2.

Given the dearth of information about Plaintiffs' membership, there is no reason to believe that their so-called "members" exercise any oversight or control over the organizations. *Cf. Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997) (to establish associational standing, an organization must identify "indicia of membership" such as "a clearly articulated and understandable membership structure" with members who "elect[] the governing body"). What's more, Plaintiffs argue that that one of their members, Ryan, can opt out of any relief from this Court by essentially claiming that Texas Association of Business does not represent its interests. Notice ¶ 6. But Plaintiffs have not submitted any declarations from any other entities besides Highland Landscaping and Alloy Precision Technologies purporting to be a member whose interests they *do* represent in this action. Further, permitting Plaintiffs to represent their undisclosed members in this manner would allow any member to sit on its hands while this case proceeds before deciding whether

to take advantage of any relief awarded in this case, or to simply opt out and file a separate lawsuit elsewhere. Accordingly, any relief entered by this Court in favor of Plaintiffs should not apply to any entity other than Highland Landscaping and Alloy Precision Technologies.

## II.   In the Alternative, If the Court Permits Plaintiffs to Continue to Litigate on Behalf of Unidentified Members, the Court Should Transfer This Case to the Venue of the First-Filed Case.

However, if Plaintiffs contend (and the Court agrees) that Plaintiffs, including the Texas Association of Business, can represent all of their members, including those not specifically identified by declaration in this action, and that any relief ordered would run to those unidentified entities, then transferring the case to the Northern District of Texas would be the proper course. There is no basis or mechanism for Ryan to choose to "opt out" of this litigation; thus, because Ryan is a member of the Texas Association of Business, any relief this Court may award as to the Texas Association of Business's membership would also apply to Ryan. That would give Ryan the proverbial "two bites at the apple" and raise the specter of inconsistent judgments. *Cf. West Gulf Maritime Ass'n v. Int'l Longshoremen's Ass'n*, 751 F.2d 721, 731 n.5 (5th Cir. 1985) (holding transfer was appropriate because the local union defendants were "in privity" with the association in the first-filed suit and "could be bound by any injunction the [first-filed] court . . . might issue").[3]

In the Fifth Circuit, the "first-to-file" rule governs circumstances when a subsequent suit involves parties and issues that are "substantially similar" to those in an earlier one. *Sutter Corp. v. P&P*

---

[3] Moreover, the Court should reject Plaintiffs' request to be excused on First Amendment grounds from complying with the Court's related-case disclosure requirement. *See* Notice ¶ 3. In the context of litigation, there exists a strong, "constitutionally-embedded presumption of openness in judicial proceedings." *Sealed Appellant v. Sealed Appellee*, No. 22-50707, 2024 WL 980494, at *3 (5th Cir. Mar. 7, 2024) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)). That presumption applies with no less force where, as here, an association steps into the shoes of its members to seek relief on their behalf. Here, the identities of the parties on whose behalf Plaintiffs purport to seek relief is a critical threshold issue to prevent duplicative litigation and potentially inconsistent judgments binding the same party. The cases that Plaintiffs cite do not hold otherwise.

*Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). Under this rule, the second suit may be "dismissed, stayed[,] or transferred and consolidated" with the first. *Id.* This rule is "grounded in principles of comity and sound judicial administration," as federal courts have "long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank— to exercise care to avoid interference with each other's affairs." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (citation omitted); *see also West Gulf Maritime Ass'n*, 751 F.2d at 729 ("Considerations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously.") (citation omitted). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Save Power*, 121 F.3d at 950 (citation omitted). It "applies where related cases are pending before two judges in the same district . . . as well as where related cases have been filed in different districts." *Id.*

As a procedural matter, the "Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Id.* A "second-filed court plays a limited role when presented with a motion to transfer or stay based on the first-to-file rule." *Platt v. Nash*, No. 4:16-cv-294, 2016 WL 6037856, at *1 (E.D. Tex. Oct. 14, 2016). That role is to decide whether the movant has shown a "*likelihood* of substantial overlap" between the two suits. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971) (emphasis added); *accord Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999) (second-filed court should determine only whether "the issues *might* substantially overlap") (emphasis added). If the movant makes this showing, then the second-filed

court should transfer the action to the first-filed court "to resolve the question of whether both [cases] should be allowed to proceed." *Platt*, 2016 WL 6037856, at *1 (citation omitted).[4]

The factors relevant to the substantial overlap inquiry "include whether 'the core issue' in each case is the same and whether 'much of the proof adduced . . . would likely be identical.'" *Marshall v. Chevron U.S.A. Inc.*, No. MO:19-cv-273-DC-RCG, 2020 WL 9813023, at *2 (W.D. Tex. Dec. 10, 2020) (citation omitted), *report & recommendation adopted*, No. MO:19-cv-273-DC, 2021 WL 2181148 (W.D. Tex. Jan. 6, 2021). Courts have also examined "the extent of [the] overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Save Power*, 121 F.3d at 951 (quoting *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)).

These factors weigh in favor of transfer. First, the issues in this case have a "likelihood of substantial overlap" with *Ryan*. Like this case, *Ryan* involves a challenge to the Final Rule under the Administrative Procedure Act. *See generally Ryan* Compl. And both cases seek effectively identical relief—that the Court vacate and set aside the Final Rule. *Compare id.*, Prayer for Relief ¶ 75 *with* Compl., Prayer for Relief.

More specifically, both cases involve claims that the Commission lacks statutory authority to promulgate rules under Section 6(g) of the FTC Act, *compare Ryan* Compl. ¶¶ 51-58 *with* Compl. ¶¶ 88-92, and that the Final Rule violates the nondelegation doctrine, *compare Ryan* Compl. ¶¶ 59-63 *with* Compl. ¶¶ 98-101. To be sure, the other claims differ in some respects. In the *Ryan* case, the plaintiffs

---

[4] Earlier Fifth Circuit cases suggest that the second-filed court also has the discretion, in appropriate circumstances, to dismiss or stay the second-filed action. *See, e.g.*, *West Gulf*, 751 F.2d at 729 & n.1 (while "a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court," "it sometimes may be appropriate to transfer the action or to stay it"); *id.* at 730 ("Our holding and discussion in *Mann* make plain that in this [second-filed] case the district court should have stayed, dismissed, or transferred [the plaintiff's] action."). Although those cases do not appear to have been overturned, later Fifth Circuit cases indicate that "once the [second-filed] court [finds] that the issues might substantially overlap, the proper course of action [i]s for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and economy, proceed." *Cadle Co.*, 174 F.3d at 606.

bring a claim that is not at issue here: that the Commissioners' removal protections violate Article II. *Ryan* Compl. ¶¶ 64-68. And in this case, Plaintiffs bring four additional claims that are not at issue in the *Ryan* case: (1) the Final Rule involves an unlawful interpretation of the phrase "unfair methods of competition" in Section 5 of the FTC Act, Compl. ¶¶ 93-97; (2) the Final Rule impermissibly imposes retroactive consequences on employers and workers, *id.* ¶¶ 102-06; (3) the Final Rule is arbitrary and capricious because the Commission did not adequately support its decision, *id.* ¶¶ 107-13; and (4) the Final Rule is arbitrary and capricious because the Commission failed to consider alternative proposals, *id.* ¶¶ 114-20. But while these cases do not involve identical claims, the "core issue" in each concerns the lawfulness of the Final Rule, and this Court need only determine whether the cases "*might* substantially overlap." *Cadle Co.*, 174 F.3d at 606 (emphasis added).

Second, as noted, Ryan's membership in the Texas Association of Business poses a risk of inconsistent judgments were this suit to proceed in a separate forum. That the parties here are not identical to those in *Ryan* does not change the calculus. Under the first-to-file rule, "[c]omplete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action." *Save Power*, 121 F.3d at 951. The Fifth Circuit has explained that an "incomplete identity of parties does not mandate that two 'essentially identical' actions remain pending simultaneously where," as here, any "missing parties probably could be made parties" to the first-filed case. *Id.* (citing *West Gulf*, 751 F.2d at 731 n.5). Further, the Fifth Circuit has repeatedly noted that the first-to-file rule may be applied to "dismiss[] [a] second-filed action without prejudice even though it involved different plaintiffs than the first-filed action." *Id.* (citation omitted); *accord West Gulf*, 751 F.2d at 731 n.5.

Third, *Ryan* and this case are both at preliminary stages of litigation. In this case, Plaintiffs have not yet perfected service, and they have until May 10, 2024 to supplement their existing preliminary injunction motion. *See* Scheduling Order, ECF No. 20. Defendants have yet to file any briefing in response. Transfer would not delay resolution of either proceeding. And it is in the interest

of both the Court and the parties to transfer the action at this early juncture, before additional judicial or litigation resources are spent on parallel matters with nearly identical issues and overlapping parties. *See Nat'l Health Fed'n v. Weinberger*, 518 F.2d 711, 712-13 (7th Cir. 1975) ("Where the issues in the other pending suit are the same, then the effect to be given to that action should be further guided by broad principles of convenience, expediency, and efficiency.").

In sum, if Plaintiffs purport to litigate on behalf of entities beyond the two that have specifically alleged that they are injured by the Final Rule, this Court should transfer this case to the Northern District of Texas. Given the similarity of the claims, relief sought, and the parties, there is at least a "*likelihood* of substantial overlap" between this case and *Ryan*, *see Mann*, 439 F.2d at 408 (emphasis added), and the Court should transfer this action to the first-filed forum.

## CONCLUSION

For those reasons, Defendants respectfully request that the Court should limit Plaintiffs to litigating on behalf of only those members whom they have specifically identified and who have given them authority to do so. Alternatively, if the Court concludes that Plaintiffs may litigate on behalf of their respective memberships, the Court should transfer this case to the Northern District of Texas under the first-to-file rule.

Dated:  April 30, 2024

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

LESLEY R. FARBY
*Assistant Branch Director*

*/s/ Madeline M. McMahon*
MADELINE M. MCMAHON (DC No. 1720813)
TAISA GOODNATURE
RACHAEL WESTMORELAND
ARJUN MODY
*Trial Attorneys*
U.S. Department of Justice
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 451-7722
Email: madeline.m.mcmahon@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF CONFERENCE

I, Rachael Westmoreland, hereby certify that on April 30, 2024, counsel for the parties met and conferred via teleconference regarding the instant motion. During that conference, counsel for the parties discussed the issues to be presented in Defendants' motion. The parties were unable to reach agreement on these issues, and Plaintiffs oppose the relief sought herein.

The following counsel participated in this meet and confer:

Judson Littleton
Jeffrey Wall

*Counsel for Plaintiffs*

Rachael Westmoreland
Taisa Goodnature

*Counsel for Defendants*

/s/ *Rachael L. Westmoreland*
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 451-7476
Email: rachael.westmoreland@usdoj.gov