UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

———

No. 6:24-cv-00148

———

**Chamber of Commerce of the United States of America et al.,**
*Plaintiffs,*

v.

**Federal Trade Commission et al.,**
*Defendants.*

———

## OPINION AND ORDER

When multiple parties sue over a common act, consolidation of the parties' claims may occur in various ways. Some procedures do not turn on who wins a race to the courthouse. *E.g.*, 28 U.S.C. § 1407 (allowing a panel to consolidate actions involving common fact questions); *id.* § 2112(a) (lottery-based assignment for circuit-court review petitions filed within 10 days of an agency order). But the race to file can still matter in deciding how to consolidate parallel district-court actions for judicial review of an agency rule.

Because no statute or federal rule creates a procedure addressing the parallel nature of such agency litigation, its consolidation turns on the general principle of comity: "courts of coordinate jurisdiction and equal rank" must take "care to avoid interference with each other's affairs." *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985). To avoid "duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result," a district court should generally order "stay, transfer, or dismissal" of a second-filed action that substantially overlaps with a pending, first-filed action. *Id.* at 729–32.

That rule applies here. One day before plaintiffs brought this action for review of the FTC's Non-compete Clause Rule, a different party filed for review of that rule in a neighboring federal judicial district. *Ryan, LLC v. FTC*, No. 3:24-cv-00986 (N.D. Tex. Apr. 23, 2024). The two challenges raise identical legal theories.

They are proceeding at a similar pace. And the Northern District of Texas has jurisdiction over the subject matter and defendants here. Application of the first-to-file rule may diminish these plaintiffs' choice among venues, which is never done lightly. But the principle of comity so requires.

**1.** On April 23, 2024, the FTC issued a final rule creating a nationwide, retroactive, and sweeping ban on contractual provisions generally known as non-compete clauses. FTC, *Non-compete Clause Rule*, RIN3084-AB74 (Apr. 23, 2024). The rule takes effect 120 days after its publication in the Federal Register, which is imminent.

Later that same day, a company filed for judicial review of the rule in the Northern District of Texas. *Ryan*, *supra,* Doc. 1. Ryan originally pleaded for relief based on the following legal theories:

(1) the FTC lacks the authority under § 6(g) of the FTC Act to issue substantive rules at all, as opposed to procedural rules, *id*. ¶¶ 52–55;

(2) the FTC "lacks the authority to ban non-competes by declaring them an unfair method of competition," in part due to the sweeping, major reach of such a question, *id*. ¶ 56 (referencing § 5(a) of the FTC Act);

(3) if the FTC Act is interpreted to authorize the agency to issue the rule here, it would be an unconstitutional delegation of authority, *id*. ¶¶ 58–63;

(4) the FTC's Commissioners lacked constitutional authority to vote for the rule because their statutory removal protections are incompatible with the President's exercise of his executive power, *id*. ¶¶ 65–68 (preserving a *Humphrey's Executor* claim); and

(5) the FTC "acted arbitrarily and capriciously," *id*. ¶ 72, in that the enforceability of non-compete clauses should be "determined on a case-by-case basis" under the rule of reason because they can be a "mutually beneficial, negotiated term of employment," *id*. ¶¶ 31, IV.C.

Ryan has now amended its complaint. *Ryan*, *supra*, Doc. 22. The amended complaint restates the five theories above, elaborating on the arbitrary-and-capricious claim. *Id.* ¶¶ 87.a–87.g. It then adds allegations that:

> (6) the FTC acted arbitrarily and capriciously in failing to sufficiently consider alternative proposals, *id.* ¶¶ 87.h–87.i; and

> (7) the FTC acted contrary to law by retroactively invalidating non-compete clauses without individualized consideration like that envisioned by the Fifth Amendment, *id.* ¶¶ 89–91.

As relief, Ryan seeks a declaration of its rights, *id.* ¶ 93, an injunction if needed to enforce that declaration, *id.* ¶ 97 (citing 28 U.S.C. § 2202, which allows such injunctive relief), and an order vacating and setting aside the rule, *id.* ¶ 98.a. That last form of relief, under Fifth Circuit precedent, extends to nonparties and parties alike. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024). *See generally United States v. Texas*, 599 U.S. 670, 693, 699 (2023) (Gorsuch, J., concurring) (noting that the APA vacatur remedy means that "a single plaintiff can secure a remedy that rules the world" in administrative litigation, irrespective of ordinary joinder and class-action procedures, whereas, "[t]raditionally, when a federal court finds a remedy merited, it provides party-specific relief, directing the defendant to take or not take some action relative to the plaintiff").

There is no obvious defect in the Northern District of Texas's subject-matter jurisdiction over Ryan's claims, in its personal jurisdiction over the FTC, or in the propriety of venue in that district under 28 U.S.C. § 1391(e).

**2.** The day after Ryan brought suit, four associations filed for judicial review of the final rule in this court. Doc. 1 (Apr. 24, 2024). Invoking associational standing based on their numerous members that use non-compete clauses, *id.* ¶¶ 24–30, plaintiffs here seek relief based on the same theories now alleged by Ryan:

(1) the FTC lacks the authority under § 6(g) of the FTC Act to issue substantive rules at all, as opposed to procedural rules, *id.* ¶¶ 89–92;

(2) the FTC lacks the authority to ban non-compete clauses by declaring them an unfair method of competition, in part due to the sweeping, major reach of such a question, *id.* ¶¶ 94–97 (referencing § 5(a) of the FTC Act);

(3) if the FTC Act is interpreted to authorize the agency to issue the rule here, it would be an unconstitutional delegation of authority, *id.* ¶¶ 99–101;

(4) the FTC's Commissioners lacked constitutional authority to vote for the rule because their statutory removal protections are incompatible with the President's exercise of his executive power, *id.* 34–35 n.* (preserving a *Humphrey's Executor* claim);

(5) the FTC acted arbitrarily and capriciously, in that the enforceability of non-compete clauses cannot be judged categorically because they can benefit workers and competition, *id.* ¶¶ 108–13;

(6) the FTC acted arbitrarily and capriciously in failing to sufficiently consider alternative proposals, *id.* ¶¶ 115–20; and

(7) the FTC acted contrary to law by retroactively invalidating non-compete clauses without individualized consideration like that envisioned by the Fifth Amendment, *id.* ¶¶ 103–06.

Plaintiffs sue the agency in its own name, as does Ryan. They also sue the agency's chair, thus facilitating compliance with 5 U.S.C. § 702's requirement that injunctions specify the official responsible for adherence.

As relief, plaintiffs here similarly seek a judgment declaring their rights, an injunction against the FTC enforcing the rule against plaintiffs' members, and an order vacating and setting aside the rule (relief that applies to nonparties and parties alike under circuit precedent, as noted). *Id.* at 50 ¶¶ (i)–(iii).

**3.**  This court exercised its case-management authority to set deadlines for compliance with Local Rule CV-42(a) and for motions related to venue, forum, or related cases. Doc. 20. Because plaintiffs moved for preliminary relief, and because final adjudication of the purely legal issues here appeared manageable on a parallel track, the court consolidated preliminary and permanent relief and set a single briefing schedule for both. *Id.*

In compliance with Local Rule CV-42(a), plaintiffs listed the earlier-filed *Ryan* case as a related case. Doc. 22-1 at 1. Plaintiffs also disclosed that Ryan is a member of a plaintiff here, the Texas Association of Business. *Id.* at 2. Because disclosure of Ryan's membership in any other plaintiff here is not necessary to resolve the issue at hand, any other plaintiff's obligation to make that disclosure under Local Rule CV-42(a) is excused.

Defendants now move to either (1) apply the first-to-file rule by transferring, staying, or dismissing this case, Doc. 23 at 12–16 & n.4, or (2) in the alternative, limit any relief that may issue in this case to benefit only plaintiffs' members who are identified in court as endorsing plaintiffs' requested relief, *id.* at 10–12, 16. The latter request seems flatly contrary to case law allowing associational standing and not requiring joinder as a party of each member of an association whose interest the group protects. *See Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333 (1977); *Warth v. Seldin*, 422 U.S. 490 (1975); *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010). But the court need not decide that issue because the motion to apply the first-to-file rule is well-taken.

**4.**  The need for comity among federal district courts has long been recognized. As the Supreme Court explained in 1884, "The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity . . . ." *Covell v. Heyman*, 111 U.S. 176, 182. "As between federal district courts, . . . [although] no precise rule has evolved, the general principle is to avoid duplicative

litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952) (stating the need for "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation")).

Although no hard-and-fast rule governs all conceivable circumstances, the Fifth Circuit has handed down guidelines for the exercise of district courts' discretion. To avoid duplication of judicial effort, potentially inconsistent judgments, and piecemeal litigation of issues that call for a uniform result, "a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court." *W. Gulf*, 751 F.2d at 729. As an alternative, the district court may "transfer the action or stay it." *Id.* at 729 n.1 (noting that the court receiving a transferred case should consolidate it with the parallel case). Transfer and consolidation would directly place the two cases' claims in line for disposition in a single adjudication. A stay or dismissal would indirectly allow that result by allowing the second-filing plaintiff to use existing procedures to intervene, join, or be represented in the first-filed case. *See* Fed. R. Civ. P. 20–24.

A later Fifth Circuit case suggests that, where there is substantial overlap between cases in two courts, only the court of first filing is authorized to decide "whether the second suit must be dismissed, stayed, or transferred and consolidated." *Sutter Corp. v. P&P Indus.*, 125 F.3d 914, 920 (5th Cir. 1997). But that language is dicta because the second-filed court there was reversed for rejecting all three options, *id.* at 917, not for refusing to allow the first-filed court to pick among them. That dicta is also unpersuasive because it overreads the cited case, which turned on the court in the first-filed action having enjoined suit in the second court. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). *Sutter* also did not (and could not) overrule Supreme Court and prior circuit precedent holding that deferring to the forum of first filing is an exercise of comity *by* the court of second filing. *E.g.*, *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937) ("A court has control

over its own docket. In the exercise of a sound discretion it may hold one lawsuit in abeyance to abide the outcome of another . . . ."); *Kerotest*, 342 U.S. at 183 (in accord); *W. Gulf*, 751 F.2d at 732 (holding that deference is in "the discretion of the court in the second-filed action"); *see In re Red Barn Motors, Inc.*, 794 F.3d 481, 484 (5th Cir. 2015) (one district court can at most "request" a case's transfer by another district court).

**5.** The issue is thus whether considerations of comity justify a transfer, stay, or dismissal of this case in light of the first-filed *Ryan* case. The court is persuaded to exercise its discretion in favor of moving related proceedings to *Ryan* in the interest of comity.

**a.** First, judicial effort would be substantially duplicated were the two cases to proceed in parallel. The parties present identical legal challenges to the FTC rule. They are weighty challenges requiring close attention and care. And the challenges proceed on the same administrative record here as in *Ryan*.

**b.** Second, there is at least a potential for inconsistent judgments in the two cases, even putting aside the nonparty nature of APA vacatur. Ryan is the plaintiff in the first-filed case. And it is a member of a plaintiff association here. That procedural posture allows Ryan to benefit in this second-filed case as well.

That creates the possibly of a conflict in judgments. To wit, a hypothetical ruling by this court enjoining the FTC from enforcing its rule against plaintiffs' members would not align with a hypothetical judgment of the *Ryan* court that Ryan's challenges are not meritorious and thus denying it an injunction and declaration.

Of course, it could be possible for the FTC to comply with both courts' judgments. If one court simply denied a request for an injunction that the other court granted, the FTC would have only one coercive decree to comply with. But the inconsistency in the rationale of the two judgments would still be relevant for purposes of res judicata, as that doctrine looks not to a court's coercive commands but to the "issues that were or could have been raised" in a prior adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

The only way out of that conundrum would be this court lim-iting any injunction, vacatur, or declaration issued here to exclude Ryan (and perhaps any other member of a plaintiff association that sues down the road and whose claims reach finality first). That can be done under res judicata. But that is an affirmative defense that introduces matters extrinsic to a case—the prior judgment and its preclusive effect—creating additional complexity. And the comity doctrine, like the federal rules of procedure generally, strive to pro-mote efficiency in litigation by consolidating such parallel litiga-tion so that the claims of all affected are adjudicated together. *See generally* Michael Ray Harris, *Intervention of Right in Judicial Pro-ceedings to Review Informal Federal Rulemakings*, 40 Hofstra L. Rev. 879, 880 (2012).

**c.** The comity doctrine also seeks to avoid piecemeal litiga-tion, even apart from the concern over the same party receiving disparate judgments. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). That favors consolidation here due to the nonparty nature of APA vacatur. As noted above, the Fifth Circuit holds that permanent or preliminary relief from agency rulemak-ing that fails or likely fails the APA's standards is not limited to the named plaintiff but, instead, is vacating or postponing a rule as to all whom it would otherwise bind. *Career Colls.*, 98 F.4th at 255.

So, even if Ryan were not a member of a plaintiff organization in this case, the vacatur relief sought here stands to benefit Ryan as an entity subject to the FTC rule. Likewise, the vacatur relief sought in *Ryan* stands to benefit all members of the plaintiff asso-ciations here as nonparties subject to the FTC rule. If "a single plaintiff can secure a remedy that rules the world" in a single APA action, *Texas*, 599 U.S. at 693 (Gorsuch, J., concurring), it seems logical that a single district court and single reviewing court of appeals should decide entitlement to that global relief in one go rather than allowing multiple, parallel attempts at global relief, only one of which need succeed.

Such global relief, as opposed to party-specific relief, has long been a feature of agency litigation. *E.g.*, *Harmon v. Thornburgh*,

878 F.2d 484, 495 n.21 (D.C. Cir. 1989) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."). But even the remedial practice of circuit courts that routinely hear certain types of cases does not always carry the day. *E.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–94 (2006). And there is an "ongoing debate about whether any such rule [against equitable relief extending to nonparties when not needed to prevent irreparable injury to parties] would apply to Administrative Procedure Act cases involving new federal regulations." *Labrador v. Poe*, No. 23A763 (U.S. Apr. 15, 2024) (Kavanaugh, J., concurring).

Due to the ongoing debate (above this court's level) about the viability of APA relief for nonparties, it is important to protect these plaintiffs' right to be parties to some action. The court's mechanism for achieving comity here will ensure as much. The point is simply that, so long as APA remedies include nonparty relief, all parallel challenges to the same rulemaking present the possibility of overlapping remedies. That requires coordinate courts in our federal system to manage their cases as to achieve comity.

As plaintiffs point out, Doc. 25 at 15, the federal government has elsewhere promoted the benefits of allowing APA issues to percolate in multiple courts of appeals. *See, e.g.*, Br. for Appellant at 53, *City of Chicago v. Sessions*, No. 18-2885, 2018 WL 5087539 (7th Cir. Oct. 9, 2018) ("[A]ppellate courts exercising de novo review of a pure legal question can gain insights by comparing differing analyses of a common question."). But that was an argument against relief benefitting nonparties, not against case management to promote comity. *Id.* (arguing against "the entry of a nationwide injunction"). And, practically, so long as APA vacatur extends globally, percolation in other cases would seem much less likely after one plaintiff secures a victory.

In other word, percolation and nonparty relief strike the court as yin and yang. And the fact that Congress authorized nonparty

relief in the APA, as interpreted by circuit precedent, shows a greater emphasis on uniformity of result than percolation. That same choice of uniformity over percolation is evident in the circuit-lottery statute for administrative challenges.

The comity analysis can also examine the "comparative advantage [or] interest of [any one] forum in resolving the dispute." *TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996). Here, the purely legal nature of the APA claims reduces the comparative advantage of any one forum in resolving the dispute, as might arise if a forum had easier access to documents or property. And the global nature of APA vacatur also reduces any one forum's comparative interest in the claims shared between these two cases. Indeed, every judicial district in the country likely has businesses that use non-compete clauses and thus stand to benefit from nonparty APA vacatur.

**d.** Fourth, this case and *Ryan* are in similar procedural postures. They were filed just one day apart. Substantial discovery is unlikely in either. And motions for preliminary relief have been filed in both.

This court has ordered a schedule requiring expedited briefing that would allow a ruling addressing the substance of plaintiffs' claims by early July. Doc. 20. The court in *Ryan* will soon decide a motion to similarly expedite the briefing schedule as to allow that court to rule by early July. Doc. 29, *Ryan*, *supra*. That slight difference in the timing of entering a briefing schedule strikes this court as unimportant given that the final rule has not yet been published and given the Fifth Circuit's close attendance to district courts' timeliness in ruling on motions for preliminary relief. *See* Order, *Chamber of Commerce v. CFPB*, No. 24-10248 (5th Cir. Apr. 30, 2024) (per curiam) (ordering a district court to rule on a motion for a preliminary injunction within ten days). This court has every confidence that plaintiffs will be able to obtain timely resolution of their claims in the Northern District of Texas.

Although the defendant agency in the two cases is the same, the plaintiffs here and in *Ryan* of course differ. But the first-to-file

rule does not require complete identity of the parties. *Save Power*, 121 F.3d at 951 ("Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action."). Indeed, the rule applies in the specific context of different parties challenging the same regulations.

The Fifth Circuit has thus endorsed application of the first-to-file rule to dismiss a second-in-time action "aimed at enjoining, among other things, the State of Washington from issuing certain fishing regulations," where the dismissal was in part "grounded on the existence in another district of an action in which the validity of those regulations was in issue." *W. Gulf*, 751 F.2d at 729–30 (citing *Bergh v. Washington*, 535 F.2d 505, 506–07 (9th Cir. 1976)). Similarly, the Fifth Circuit approvingly cited (*id.* at 729) the Seventh Circuit's reliance on the first-to-file doctrine to affirm dismissal of a second-filed case brought by different plaintiffs but challenging the validity of the same regulations. *Nat'l Health Fed'n v. Weinberger*, 518 F.2d 711, 712 (7th Cir. 1975).

**e.**   In sum, the court defers to the *Ryan* court because the two cases' postures are roughly in equipoise, the substantial overlap between the cases and the comity factors support consolidation, and *Ryan* is the first-filed case. It was filed just one day before this case. But the first-to-file rule is still a rational basis for picking a forum in that context. *Intuitive Surgical, Inc. v. Cal. Inst. of Tech.*, No. 4:07-cv-00063, 2007 WL 1150787, *3 (N.D. Cal. 2007) (applying the rule in cases filed within two hours of each other: "the first-to-file rule is applicable and requires deference to the first-filed court, notwithstanding the near simultaneous nature of the filings").

**f.**   That leaves the question of the procedural mechanism for achieving comity—a dismissal, stay, or transfer.

The court elects to stay proceedings in this case to allow a motion in *Ryan* for permissive intervention under Rule 24 or perhaps for permissive addition as plaintiffs under Rules 20 and 21. That procedure draws on a court's well-established authority to stay a second-filed case or order "dismissal of a second-filed action

where the first-filed action present[s] a closely related question." *W. Gulf*, 751 F.2d at 729 (cleaned up).

In contrast, the court's authority to transfer this action to the Northern District of Texas is less clear. Some courts assume an inherent authority to transfer a second-filed case to the court hearing an earlier-filed, substantially overlapping case. *E.g.*, *Truinject Corp. v. Nestlé S.A.*, No. 4:20-cv-00457, 2020 WL 6781578, at *3 (E.D. Tex. 2020). But other courts require an extrinsic source of transfer authority, such as 28 U.S.C. § 1404(a)'s allowance of transfer for the convenience of parties and witnesses. *In re Bozic*, 888 F.3d 1048, 1053 (9th Cir. 2018). Indeed, that is how the Supreme Court spoke of the option of transfer to achieve comity:

> [C]ourts are well equipped to deal with such eventualities. *The venue transfer provision,* 28 U.S.C. § 1404(a), may be invoked by the Government to consolidate separate actions. Or, actions in all but one jurisdiction might be stayed pending the conclusion of one proceeding. A court may even in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere. In at least one suit for a declaratory judgment, relief was denied with the suggestion that the plaintiff intervene in a pending action elsewhere.

*Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967) (cleaned up). Each option listed there drew on an extrinsic source of authority: § 1404(a) transfer authority, equitable discretion in deciding whether to issue declaratory or injunctive relief, or a court's case-management authority to stay litigation.

Even assuming inherent authority to transfer a case to achieve comity, as opposed to convenience for the parties and witnesses, it is unclear that the Northern District of Texas would be a proper venue for this action standing alone. No plaintiff here alleges that it resides in that judicial district, that a defendant resides in that district, or that a substantial part of the rule's issuance occurred in that district. Doc. 1 at 12–13; *see* 28 U.S.C. § 1391(e). On the other hand, if plaintiffs here intervene or otherwise join in *Ryan*

as plaintiffs, venue there would remain properly laid because only one among many plaintiffs need reside in a judicial district for venue to be proper there under 28 U.S.C. § 1391(e). *Chamber of Commerce v. CFPB*, No. 6:22-cv-00381, 2023 WL 5835951, at \*7 (E.D. Tex. 2023), *appeal filed but stayed* (5th Cir. No. 23-40650).

Lastly, steering plaintiffs to intervene in *Ryan* tracks the Supreme Court's acceptance of such a course in *Gardner* as a viable alternative. 387 U.S. at 155 (noting one court's dismissal with "the suggestion that the plaintiff intervene in a pending action elsewhere"). And the *Weinberger* case favorably cited by the Fifth Circuit in *West Gulf* also suggests that course. 518 F.2d at 713–14 (noting that plaintiffs whose claims are dismissed without prejudice for comity reasons are free to have their day in court by joining the first-filed action).

The Federal Rules of Civil Procedure should easily accommodate the addition of plaintiffs here to the earlier-filed *Ryan* action. And given that the *Ryan* court has already expedited the timeline for setting a briefing schedule, this court harbors little doubt that the *Ryan* court will consider these plaintiffs' claims with the utmost care and expediency.

\*   \*   \*

For those reasons, defendants' motion (Doc. 23) to apply the first-to-file doctrine is granted. The unexpired deadlines in the court's scheduling order (Doc. 20) are lifted, and proceedings in this case are stayed. Plaintiffs should notify the court if their claims are accepted in *Ryan* through plaintiffs' intervention or addition as parties there or, alternatively, if such intervention or addition is denied.

*So ordered by the court on May 3, 2024.*

J. CAMPBELL BARKER
United States District Judge