UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, BUSINESS ROUNDTABLE, TEXAS ASSOCIATION OF BUSINESS, and LONGVIEW CHAMBER OF COMMERCE,<br><br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL TRADE COMMISSION and LINA KHAN in her official capacity as Chair of the Federal Trade Commission,<br><br>*Defendants*. | **Case No. 6:24-cv-00148 [JCB]** |

**PLAINTIFFS' RESPONSE TO MAY 10 ORDER
REGARDING EX PARTE COMMUNICATIONS**

1

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...................................................................................................4

BACKGROUND ..............................................................................................................................5

ARGUMENT ....................................................................................................................................5

I.     RECUSAL IS NOT WARRANTED IN THIS CASE ..................................................6

         A.    Recusal is not required when the effect of a judge's ownership interest in a nonparty is remote or speculative .................................................7

         B.    The effect on a judge's ownership interest in a nonparty is not easily ascertainable in most, if not all, challenges to agency rules ............................8

         C.    Any effect of this litigation on an ownership interest in a nonparty is too remote or speculative to justify recusal in this case .................................11

II.    THE COURT SHOULD ISSUE AN ORDER ADDRESSING THIS ISSUE DESPITE PLAINTIFFS' FORTHCOMING VOLUNTARY DISMISSAL ........................................................................................12

CONCLUSION ..............................................................................................................................13

## TABLE OF AUTHORITIES

*Page(s)*

**CASES:**

*Chase Manhattan Bank* v. *Affiliated FM Insurance Co.*,
  343 F.3d 120 (2d Cir. 2003) ................................................................................... 7

*Department of Energy* v. *Brimmer*,
  673 F.2d 1287 (Emer. Ct. App. 1982) ................................................................... 9

*Edwards* v. *United States*,
  334 F.2d 360 (5th Cir. 1964) .................................................................................. 4

*Nixon* v. *General Motors Corp.*,
  2023 WL 3600788 (5th Cir. May 23, 2023) ........................................................... 8

*In re Placid Oil Co.*,
  802 F.2d 783 (5th Cir. 1986) .................................................................................. 8

*Sensley* v. *Albritton*,
  385 F.3d 591 (5th Cir. 2004) ............................................................................ 4, 12

*Tramonte* v. *Chrysler Corp.*,
  136 F.3d 1025 (5th Cir. 1998) ................................................................................ 9

*Weingart* v. *Allen & O'Hara, Inc.*,
  654 F.2d 1096 (5th Cir. 1981) ................................................................................ 8

**STATUTES:**

28 U.S.C. § 455 .......................................................................................................... 4, 7

**OTHER AUTHORITIES:**

Canon 3C(1)(c), Code of Conduct for United States Judges ....................................... 7

Commission on Codes of Conduct Advisory Opinion. No. 49 ...................................... 7

Commission on Codes of Conduct Advisory Opinion No. 57 ....................................... 7

Commission on Codes of Conduct Advisory Opinion No. 94 ..................................... 10

**PRELIMINARY STATEMENT**

After receiving an ex parte communication from a nonparty, this Court invited the parties "to file briefs . . . explaining their views on whether or not an ownership interest in a nonparty company or mutual fund in the technology, energy, retail, pharmaceutical, or any other sector" would require recusal in this case under 28 U.S.C. § 455. ECF No. 29 (Order). Plaintiffs respectfully submit that it would not. Recusal is not warranted when a case might have only an indirect, speculative, or contingent effect on a judge's financial interests in nonparties. That will almost always be the case in litigation challenging agency action. In such cases—particularly when the challenged action sweeps as broadly and generates as much uncertainty as the Noncompete Rule—a judge will rarely (if ever) be able to ascertain whether the outcome of the case will have an effect on a nonparty company or mutual fund. Under such circumstances, the judge need not recuse.

Now that plaintiffs have intervened in a different litigation to challenge the Noncompete Rule, they intend to voluntarily dismiss this action. But plaintiffs believe that the Court's order raises questions that are important to the integrity of the federal judiciary and judges' duty to hear the cases to which they are assigned. *See Sensley* v. *Albritton*, 385 F.3d 591, 598-599 (5th Cir. 2004) ("[A] federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified.") (citing *Laird* v. *Tatum*, 409 U.S. 824, 837 (1972)); *Edwards* v. *United States*, 334 F.2d 360, 362 n.2 (5th Cir. 1964) ("It is a judge's duty to refuse to sit when he is disqualified but it is equally his duty to sit when there is no valid reason for recusation."). Accordingly, plaintiffs urge the Court to issue an order holding that recusal is not required. Plaintiffs believe such an

order would provide valuable clarity on these issues and avoid any suggestion that it was improper for the Court to preside over this case.

## BACKGROUND

On April 24, 2024, plaintiffs filed this suit under the Administrative Procedure Act seeking to set aside the Federal Trade Commission's Noncompete Rule. On May 3, 2024, this Court stayed this case pursuant to the first-to-file doctrine and "steer[ed] plaintiffs to intervene" in the Northern District of Texas, where a different party was challenging the Noncompete Rule. ECF No. 27, at 13. Plaintiffs have since done so. *See* Order Granting Intervention, *Ryan LLC* v. *Federal Trade Comm'n*, 3:24-cv-00986-E (N.D. Tex. May 9, 2024) (ECF No. 37).

On May 10, this Court entered the Order "to disclose its receipt of an ex parte communication by a nonparty questioning whether the undersigned should recuse from this action due to owning stocks of companies in the technology, energy, retail, and pharmaceutical sectors." Order at 1. The Order invited the parties to file briefs on the recusal issue. *Id.* at 2.

Similar submissions have been made to courts in other cases, each time seeking the recusal of a judge based on a supposed financial interest in a nonparty. *See Chamber of Commerce* v. *CFPB*, No. 24-10248 (5th Cir. April 8, 2024).

## ARGUMENT

The Court should issue an order explaining that recusal is not warranted in this case. Recusal is only appropriate based on an ownership interest in an entity that is not a party to the litigation when a judge knows that interest will be substantially affected by the outcome of the litigation. That will rarely (if ever) be the case in regulatory litigation, and

5

is certainly not true here. Because this issue is important to the integrity and functioning of the judiciary, and to avoid any suggestion of impropriety here, this Court should address the issue notwithstanding plaintiffs' forthcoming dismissal of this case.

### I.      Recusal Is Not Warranted In This Case.

Judges must recuse based on ownership interests in nonparties only when it is easily ascertainable that those interests will be substantially affected by the outcome of litigation. That is not the case when the potential effect on the ownership interest is indirect, speculative, or contingent. Judges are not tasked with economic omniscience, but rather a duty to decide cases.

For this reason, courts across the country have been unwilling to require recusal in cases—including challenges to unlawful agency action—merely because a judge owns stock in a company or mutual fund in the same industry as a party to the case. That result makes sense because the effect of a rule on a specific regulated entity's stock is remote and at best speculative for multifaceted businesses operating in complex regulatory environments. That is certainly the case for the Noncompete Rule. As the Commission readily acknowledges, the Rule will broadly affect millions of businesses across every sector of the economy. Given the sheer breadth of the Rule's application, judges cannot readily ascertain whether or how the Noncompete Rule will affect the stock of any particular company or the performance of any particular mutual fund. In such circumstances, recusal is unwarranted. Judges' ability to fairly decide the cases before them deserves more respect than a contrary rule would provide.

### A.  Recusal is not required when the effect of a judge's ownership interest in a nonparty is remote or speculative.

As an initial matter, the Order correctly notes that this is not a case in which a judge could have a financial interest "in a party to the proceeding." Canon 3C(1)(c), Code of Conduct for United States Judges. As a result, recusal would be required only if a judge "knows" that he "has a financial interest in the subject matter in controversy . . . or any other interest that could be affected substantially by the outcome of the proceeding." *Id.*; *see* Comm. on Codes of Conduct Advisory Opinion No. 49 (finding "no impropriety in a judge serving in a proceeding where a trade association appears as a party, even though the judge owns a small percentage of the publicly-traded shares of one or more members of the association, so long as that interest could not be substantially affected by the outcome of the proceeding").

In a case involving a judge's ownership of stock in a nonparty company, relevant authorities indicate that recusal is warranted under Canon 3C(1)(c) and 28 U.S.C. § 455 only if the judge knows that the outcome of the proceeding could substantially affect the value of the company's stock. *See* Advisory Opinion No. 57 (applying the standard whether the outcome would "substantially affect the value of the interest"). And because the touchstones in this circumstance are the judge's knowledge and whether a judge's "impartiality might reasonably be questioned," 28 U.S.C. § 455(a), courts have held that recusal is not warranted under the applicable standard unless the litigation's substantial effect on the judge's interest is "easily ascertainable." *Chase Manhattan Bank* v. *Affiliated FM Ins. Co.*, 343 F.3d 120, 128-29 (2d Cir. 2003) (even a direct financial interest in a party must be "easily ascertainable" to create the appearance of a conflict of interest). As these

7

authorities recognize, judges should not be placed under an unrealistic and unreasonable burden to determine every conceivable effect on nonparties.

An indirect, speculative, or contingent effect on a judge's ownership interest in a nonparty is unlikely to require recusal because it will not be easily ascertainable. *See In re Placid Oil Co.*, 802 F.2d 783, 786-87 (5th Cir. 1986) ("A remote, contingent, and speculative interest is not a financial interest within the meaning of the recusal statute, nor does it create a situation in which a judge's impartiality might reasonably be questioned.") (internal citation omitted); *Weingart* v. *Allen & O'Hara, Inc.*, 654 F.2d 1096, 1107 (5th Cir. 1981) (concluding that a "judge's mere ownership of three life insurance policies, representing mutual ownership, in the parent corporation of a party to the suit" did not "demonstrate that the outcome of the proceeding could have substantially affected the value of that ownership interest").

### B. The effect on a judge's ownership interest in a nonparty is not easily ascertainable in most, if not all, challenges to agency rules.

Applying these principles, courts across the country have been "unwilling to adopt a rule requiring recusal in every case in which a judge owns stock of a company in the same industry as one of the parties to the case." *Placid Oil Co.*, 802 F.2d at 786-87. In *Placid Oil*, for example, the court held that a judge with investments in a nonparty bank did not need to recuse himself from a case with a different bank as a party, even though the case might have affected the banking industry. Other courts have reached similar conclusions. *See, e.g., Nixon* v. *General Motors Corp.*, 2023 WL 3600788, at *1 (5th Cir. May 23, 2023) (finding appeal "frivolous" and "without arguable merit" where appellant alleged district court should have recused itself from proceedings because the judge owned stock in a

8

nonparty that entered a business agreement with defendant); *Tramonte* v. *Chrysler Corp.*, 136 F.3d 1025, 1029 (5th Cir. 1998) ("[O]wning stock in a publicly held [nonparty] that may own a [party's product] offers no more than a remote or speculative interest.").

That principle—that recusal is not warranted for an ownership interest in a nonparty, even in the relevant industry, when a substantial effect is not easily ascertainable—has been applied in the rulemaking context as well. In *Department of Energy* v. *Brimmer*, 673 F.2d 1287, 1295 (Emer. Ct. App. 1982), the court held that a judge who owned stock in companies regulated by a federal rule did not need to recuse himself from a challenge to that rule by similar companies. The case involved a Department of Energy rule winding down a government program that effectuated oil price controls. Several oil companies challenged the rule. The Department moved to recuse the judge on the ground that he owned stock in four nonparty oil companies that participated in the same program and thus were subject to the same rule. The judge declined to recuse, and the temporary court of appeals (created by statute in the 1970s, with sitting judges appointed by the Chief Justice) agreed, rejecting the argument that such ownership interests warranted recusal. After concluding that there was no "direct" financial interest in the case, the court explained that "[t]he question that remains is whether the judge had some other interest that could be substantially affected by the outcome of the proceeding." *Id.* at 1295. The court concluded that the answer was no: "[t]here is a possibility that the value of the shares held by the judge might be affected in some very small way by the outcome of this case, but this would be such a slight effect as not to be substantial." *Id.*

The same result will follow for virtually all (if not all) challenges to unlawful agency action. Whether and to what extent a given rule—and the outcome of a challenge to that rule—will affect any particular stock or mutual fund investment will almost always be highly speculative. Multifaceted businesses can and do respond to new regulations in a variety of ways, and it is wrong to assume that even hefty compliance costs or sharp decreases in revenue will necessarily have an impact on an individual entity's stock—let alone a substantial one. *See, e.g.*, Advisory Opinion No. 94 ("[E]ven if the suit were of that magnitude, it might not have the potential to substantially affect the judge's royalty interest if it is clear that the oil or gas could and would be marketed to others at a comparable price in the eventuality that the purchaser/party before the judge no longer remained a viable purchaser as a result of the suit."). The expected effects are particularly speculative where the challenged regulation affects a huge swath of the national economy and burdens different businesses (including businesses in the same sector) in different ways. The recusal rules do not require judges to attempt to divine the effects of a significant rulemaking on the national economy or chart out the potential mitigating actions an entity might take that would affect his or her investment. Such analysis will almost always fall well outside a judge's expertise.

A recent decision from the Committee on Codes of Conduct confirms that analysis. Last month, the Committee unanimously concluded that a judge was not automatically required to recuse from litigation challenging a Consumer Financial Protection Bureau rule capping late fees on credit card accounts on the ground that his family member owned stock in a nonparty credit card issuer. *See* Committee on Codes of Conduct of the Judicial

Conference of the United States, Letter, *Chamber of Commerce*, No. 24-10248 (ECF No. 92-2). In that case, the CFPB sought recusal on the ground that "large credit card issuers" are interested persons in the litigation, such that a judge who owns (directly or through a close family member) stock in such a company "has a financial interest in the subject matter in controversy" or an "interest that could be affected substantially by the outcome of the proceeding." *Id.* at 2. The Committee disagreed, reasoning that any impact of the litigation on the stock of a nonparty credit card issuer would be "at best, indirect and contingent." *Id.* As the Committee explained, the "judicial system could not function effectively" if judges were required to recuse "every time a litigant raises a question of impartiality." *Id.* The Committee thus emphasized that "more than mere speculation about the potential effect of litigation on a judge's ownership interest in a nonparty would normally be necessary to support a conclusion requiring recusal." *Id.* at 3. Even if the nonparty stock price "could be affected by market forces based upon the outcome of [the] case," the Committee explained, "that does not by itself convert [a judge's] stock ownership to a direct financial interest requiring recusal." *Id.* at 3.

  C. **Any effect of this litigation on an ownership interest in a nonparty is too remote or speculative to justify recusal in this case.**

An ownership interest in a nonparty stock or mutual fund does not warrant recusal in this case. This litigation involves a challenge to an unlawful agency rule broadly banning noncompete agreements. The Noncompete Rule bans virtually all noncompete agreements going forward and invalidates tens of millions of existing agreements. Although the consequences of that sweeping Rule are sure to be significant, its impact on the value of any given company's stock or mutual fund is highly uncertain, speculative, and contingent on

11

any number of other factors. Not all businesses use noncompete agreements or plan to do so in the future; those that do may respond to the burdens of Noncompete Rule in different ways. Some may stop offering specialized workforce training, while others may rely on expensive trade secret litigation or shift jobs outside the United States. There is even uncertainty as to *who* will be affected by the Rule; the Commission estimates that the Rule will outlaw millions of existing contracts, but its vague "functional" test for defining noncompete agreements will make it difficult to determine whether some agreements are prohibited.

As a result, this Court plainly could not easily ascertain whether the outcome of this litigation would substantially affect an ownership interest in any particular nonparty company or mutual fund. If judges were required to recuse under these circumstances, it is hard to see how any judge who owns any stock or mutual fund investment could preside over a suit challenging a regulation as broad as the Noncompete Rule. As explained by the Committee's letter, nothing in the Code of Conduct requires that result. This Court thus has no duty to recuse and appropriately presides over the case. *See Sensley*, 385 F.3d at 598-599.

## II. The Court Should Issue An Order Addressing This Issue Despite Plaintiffs' Forthcoming Voluntary Dismissal.

Because plaintiffs are now pursuing their challenge to the Noncompete Rule in another court, they intend to dismiss this action in the near future. Although that may eliminate any formal obligation of the Court to address the issues raised by the ex parte communication, plaintiffs respectfully submit that the Court should nonetheless issue such an order. These questions are important and—given other similar recent efforts to secure

recusal—timely. Other courts have rejected similar efforts to remove judges from cases based on speculative and attenuated connections between a judge's financial interests and litigation challenging unlawful agency action. This Court should thus take this opportunity to clarify that recusal is not required in these circumstances and to discourage efforts by interested nonparties to dictate the judges that can preside over significant cases. A decision from this Court would also remove any doubt about the propriety of the Court's presiding over this case to date.

## CONCLUSION

Plaintiffs respectfully request that the Court issue an order explaining that recusal was not required in this case.

Dated:  May 24, 2024

Jordan L. Von Bokern (*pro hac vice*)
Tyler S. Badgley (*pro hac vice*)
U.S. CHAMBER LITIGATION
 CENTER
1615 H Street NW
Washington, D.C.  20062
Tel:  (202) 463-5337
jvonbokern@uschamber.com
tbadgley@uschamber.com


Liz Dougherty (*pro hac vice*)
BUSINESS ROUNDTABLE
1000 Maine Avenue SW
Washington, DC 20024
202-872-1260
ldougherty@brt.org

/s/ *Michael E. Jones*
Michael E. Jones (Texas Bar No.: 10929400)
Shaun W. Hassett (Texas Bar No.: 24074372)
POTTER MINTON, PC
102 North College Avenue
Suite 900
Tyler, TX 75702
Tel: (903) 597-8311
mikejones@potterminton.com
shaunhassett@potterminton.com

Jeffrey B. Wall (*pro hac vice*)
Judson O. Littleton (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C.  20006-5215
Tel:  (202) 956-7000
wallj@sullcrom.com
littletonj@sullcrom.com

*Counsel for Plaintiffs Chamber of Commerce of the United States of America, Business Roundtable, Texas Association of Business, and Longview Chamber of Commerce*